### JAMES L. SIKES *vs.* INHABITANTS OF HATFIELD.

A surveyor of highways cannot recover compensation of the town for his official services.

Where a highway tax is raised to be expended in labor and materials, a surveyor of highways cannot charge the town for work performed by himself, at his own discretion, beyond the amount of his own tax bill.

Votes of a town to raise a certain sum of money for the repairs of highways, and that the same be a labor tax, and "to pay the surveyors one shilling per hour, teams one shilling per hour, and hands fifteen cents per hour," are no evidence of a contract by the town to pay a surveyor for work voluntarily performed by himself upon the highways, beyond the appropriation; even if the town has paid for such services in past years.

ACTION OF CONTRACT by a surveyor of highways in Hatfield for 1856 to recover of the town compensation for work done upon the highways in the district assigned to him by the assessors, beyond the amount of his own highway tax for the year, and in addition to the whole amount of the tax list committed to him.

At the trial in the court of common pleas in Hampshire at June term 1859, the plaintiff offered in evidence an auditor's report, which found the following facts : The town of Hatfield passed these votes at their respective dates :

"1855. April 16th. Voted, to raise the sum of five hundred dollars for highways, and that the same be a labor tax. Voted, To pay the surveyors one shilling per hour, teams one shilling per hour and hands fifteen cents per hour. Voted, That the surveyors be collectors of their tax bills.

"1856. April 7th. Voted, That the money raised for the

repairs of highways the ensuing year be a labor tax, and that the same price for labor per hour be paid surveyors, hands and teams as was paid last year. Voted, That the surveyors be collectors of their rate bills. Voted, To raise the sum of five hundred dollars for highways the year ensuing."

The town also appropriated four hundred and fifty dollars for contingent expenses in 1856. On the 7th of April 1856, the plaintiff was chosen surveyor of highways in a district in which he did not reside, and duly sworn. After his election, in April and May 1856, he did work upon the highways in the district assigned to him, to the amount of $9.58.

The list of persons taxed, with the amount of their taxes ($158.66) and the warrant for collection, signed by the assessors, bearing date of the 7th of June 1856, were delivered to the plaintiff on the 9th of June; and the plaintiff caused the whole amount of taxes, thus committed to him, to be expended in the repairs of the highways within his district, either in labor by the taxpayers, or, where they paid in money, in labor for which the money was appropriated, exclusively of his charge for superintendence of such repairs, ($39.69,) and for his personal services on said highways, ($13.93,) all of which was faithfully bestowed upon the improvement of the highways, and for which he received no compensation. The plaintiff's own highway tax was thirty six cents. The plaintiff, by agreement with some of the taxpayers, worked out their taxes for them; charging some of them only twelve and a half cents an hour, while the town allowed in the tax bills fifteen cents an hour.

Some time after all the services were performed, the plaintiff presented a bill to the town, and requested payment. The selectmen objected to the amount of the bill, and brought it before the town. The town referred the subject to a committee, who, after consideration, reported in favor of paying the plaintiff twenty five dollars, provided he would accept that sum, and give a receipt in full of his claim, which he refused to do, and commenced this action.

In years previous to 1856 surveyors of highways in Hatfield had been in the habit of doing work beyond the amount of

their tax bills, and being paid therefor by an order of the select-men upon the town treasurer. There was an understanding that a surveyor might do himself, or cause to be done by others, work to the amount of ten dollars, beyond the amount of their tax bills, without authority from the selectmen; but that if such work exceeded that amount, they must have the previous verbal approbation of one or more of the selectmen. Several instances of such work in years previously to 1856, to a larger amount than ten dollars, done by the surveyor himself and by others employed by him, were proved to have been pre-sented to the selectmen and paid for by orders on the town treasurer; and the plaintiff relied upon this usage to sustain his claim.

The auditor disallowed the item of $9.58 for services per-formed by the plaintiff before he received his tax list, and of $13.93 for his personal services afterwards, and allowed the charge of $39.69 for superintending the work of others. The parties agreed that all objections to evidence should be open on the auditor's report.

*Briggs,* J., "*pro forma,* and for the purpose of saving all questions upon the auditor's report, instructed the jury that upon the facts and evidence reported by the auditor they might render a verdict for the plaintiff for the full amount claimed." The jury returned a verdict accordingly, and the defendants alleged exceptions.

*S. T. Spaulding,* for the defendants.

*W. Allen,* Jr. for the plaintiff. The general duties required by law of a highway surveyor, when the tax is a labor tax are, 1st. To collect the tax in labor and materials, and if any pay-ment is offered in money, to receive it and expend it in repairing the ways; 2d. If there is a deficiency in the amount received from the tax, to supply it by procuring labor and materials on the credit of the town, in the manner pointed out by statute; 3d. To determine what particular repairs shall be made, and to make the same with the labor and materials furnished by the tax, or procured on the credit of the town. *St.* 5 W. & M. (1693), Anc. Chart. 267. *St.* 1786, *c.* 81. Rev. Sts. *c.* 25,

§§ 1, 3, 11–14, 21, 22, 24; c. 15, §§ 82–84. *Loker* v. *Brookline*, 13 Pick. 343. *Armstrong* v. *Wendell*, 9 Met. 522. *Callender* v. *Marsh*, 1 Pick. 418. *Wood* v. *Waterville*, 5 Mass. 294.

These services are for the town, and the surveyor, like other town officers, is entitled to a reasonable compensation from the town, without any statute or any vote expressly giving it. Rev. Sts. *c.* 15, §§ 36, 65; *c.* 23, § 42. *White* v. *Phillipston*, 10 Met. 108. *Emerson* v. *Newbury*, 13 Pick. 377. A labor highway tax is not a fund appropriated to the payment of the surveyor's compensation, and he must look to the town. *St.* 5 W. & M. Anc. Chart. 267. *Sts.* 1786, *c.* 81; 1796, *c.* 58, § 5. Rev. Sts. *c.* 15, §§ 8, 11, 17, 18. *Jones* v. *Lancaster*, 4 Pick. 149. *Loker* v. *Brookline*, 13 Pick. 343.

The vote of the town, unexplained, is a promise to pay in money for services as surveyor, and renders the town liable for services required of the plaintiff by law, even if, without the vote, an action could not be maintained. If the vote is doubtful, the acts of the town and its agents, under the vote, are competent to show that a payment of money by the town was intended.

The right of the plaintiff to recover for services not required of him by virtue of his office rests on the contract proved by the vote, construed by the usage and acts of the town, which are competent to show for what labor payment was promised. The vote, unexplained, would be construed to refer to the legal services of surveyors; but the language is so general, that the circumstances under which the contract was made, and the acts of the parties under it, are competent to show that it was intended to include also services not required by law, but for which the town had power to contract. *Dudley* v. *Weston*, 1 Met. 477. *Barry* v. *Bennett*, 7 Met. 354. *Knight* v. *New England Worsted Co.* 2 Cush. 271. *Herring* v. *Boston Iron Co.* 1 Gray, 134. *Sargent* v. *Adams*, 3 Gray, 72. *Gerrish* v. *Towne*, 3 Gray, 82. *Old Colony Railroad* v. *Evans*, 6 Gray, 25. *Howlett* v. *Holland*, 6 Gray, 418.

The town had authority to contract with its surveyors to make, personally, repairs on highways. *Sts.* 1786, *c.* 81, § 8

1796, *c.* 58, § 5.   Rev. Sts. *c.* 15, §§ 11, 12 ; *c.* 25, §§ 1, 8, 9, 11–15. *Spaulding* v. *Lowell,* 23 Pick. 71.   *Cushing* v. *Stoughton,* 6 Cush. 389.   *Emerson* v. *Newbury,* 13 Pick. 377.   *Wood* v. *Waterville,* 5 Mass. 294.

The evidence was sufficient to authorize the jury to find that all the services performed by the plaintiff were intended by the vote.

HOAR, J.   It is no part of our duty, and therefore we have no occasion or authority to consider, whether, under all the circumstances, it would be well or honorable for the town to refuse to make any payment for these services, if they have been rendered in good faith, and have been substantially beneficial. The case comes before us to be decided as one of strict legal right, and must be determined upon principles of general application.

It involves two principal questions : First, whether the services rendered created a legal liability in the town to pay for them, independent of any specific contract ; and secondly, whether there is any evidence sufficient to authorize a jury to find that the town have made a valid contract with the plaintiff, express or implied, upon which it can be charged.

The court are of opinion that there is no such relation between a town and the officers which it is required by law to elect, as will oblige it to make compensation to them for the discharge of ordinary official duties, where no provision for any compensation is made by law, and in the absence of any contract.   Before the recent statute, selectmen received no compensation, although their duties were often burdensome and their services valuable.   Until express provision was made by law, the same was true of the members of school committees.   Aldermen and common councilmen in the cities are not usually paid, nor overseers of the poor in the towns.   A suit against the town, for the reasonable value of the time and labor bestowed upon the public service by such an officer for six years preceding the date of the writ, would probably occasion some astonishment to his townsmen who had elected him.   There are usually found in all our towns citizens enough who are competent to fill

these offices properly, who are willing to discharge their duties gratuitously, influenced by motives of public spirit,· or by the honor or incidental advantages attached to the position. In some cases, the law provides that a citizen shall not be required to accept the office so frequently as to make his share of the common duty unreasonable.

The office of surveyor of highways is one which generally is quite extensively distributed, by having a considerable number of districts, in such towns as do not make the care of the highways the subject of special contract. It is an office which, according to the usual practice, affords some compensating advantages to its possessor, and is not unfrequently an object of competition. The surveyor has the opportunity to work out his own tax, where the tax is to be expended in labor, at such time as he may himself determine; and may expend, according to his best judgment, the portions of the tax which may be paid to him in money. He usually finds opportunity to employ some labor profitably in working out the taxes of his neighbors who may employ him for that purpose. But above all, he is enabled to secure at least a reasonable degree of attention to such parts of the public ways as more especially affect his personal convenience. But from whatever motives he may take the office, it is not an office to which, by law or usage, any compensation is attached, unless the town choose to contract for it.

Having no right to personal compensation for his ordinary services, can he then charge the town for labor performed by himself, because the money appropriated to his district is not sufficient to put the roads in a proper condition? We think the statutes relating to the subject clearly exclude such an inference. The town, in the first place, is to determine what sum of money shall be expended upon the roads. If, before this can be made available, or after it is exhausted, an exigency occurs, the surveyor can contract, on the credit of the town, for necessary labor and materials, to an amount not exceeding ten dollars. If a larger amount is requisite, he must obtain the written consent of the selectmen, and, with this, may contract to any extent which may be needed. Rev. Sts. *c.* 25, §§ 8–14. But in mak-

ing such a contract he acts as the agent of the town, and of course cannot contract with himself. It is one of the elementary principles of the law of agency, that an agent to procure supplies cannot, without the most distinct authority from his principal, furnish those supplies himself. It is inconsistent with the whole nature of his functions that he should do so. The auditor therefore rightly disallowed the charge of $9.38 for work done by the surveyor before he received his tax list. It is undoubtedly not uncommon for a surveyor to do small repairs upon the roads, when it is more convenient to him than it would be to employ others, and for a town to allow and pay his charge without question. But there are many things in the management of town affairs, which are done without objection, and pass by general consent, which cannot, when objection is made, and they are brought to the test of judicial investigation, be supported as strictly legal.

The question remains, whether the evidence stated in the bill of exceptions is sufficient to prove a contract by the town to pay the surveyor anything for his services, beyond the amount of his tax list; and we think it manifestly insufficient. The vote of the town relied on does nothing more than fix, as the town is authorized by law to do, the rate of compensation for each man, team and surveyor, by the hour, in working out the amount of the tax list. There is nothing in it to show that the town contemplated the expenditure of any sum beyond that which they had appropriated and raised by tax for the support and repair of the roads. The fact that the town had in some instances consented to pay surveyors for work done under similar circumstances, and where the surveyors had therefore no legal claim upon them, cannot be considered as evidence of a contract with this plaintiff. The town have offered to pay him $25, which he has declined. But this is no proof that they owe him anything.     *Exceptions sustained.*